UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE: PHOTOCHROMIC LENS
ANTITRUST LITIGATION

Case No. 8:10-MD-2173-T-27EAJ

This order relates to the following case(s):

8:10-cv-2040-T-27EAJ

_____/

## ORDER

**BEFORE THE COURT** is Defendant Transitions Optical, Inc.'s Motion to Dismiss the Complaint of Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide, Inc. (Dkt. 73). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part. Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide, Inc. ("Vision-Ease") will be granted leave to file an amended complaint within **twenty (20) days** from the date of this Order.

### Applicable Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint as alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

While the Court must accept all factual allegations as true in evaluating a motion to dismiss under Rule 12(b)(6), the tenet does not apply to legal conclusions. *Ashcroft*, 129 S. Ct. at 1949 (2009). Similarly, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Discussion

The Complaint asserts claims against Transitions Optical, Inc. ("Transitions") for (1) monopolization under 15 U.S.C. § 2[1] (Count I), (2) unlawful agreements in restraint of trade under 15 U.S.C. § 1[2] (Count II), (3) exclusive dealing under 15 U.S.C. § 14[3] (Count III), (4) violations of various state laws prohibiting unfair or unconscionable practices (Count IV), and (5) tortious interference under Florida and/or Minnesota law (Count V).

Transitions moves to dismiss the Complaint arguing, *inter alia*, that (1) the federal antitrust claims and certain state law claims are barred by the applicable statutes of limitation, (2) Vision-Ease lacks antitrust standing to pursue its federal antitrust claims, (3) Vision-Ease has failed to allege

---

[1] Section 2 of the Sherman Act.

[2] Section 1 of the Sherman Act.

[3] Section 3 of the Clayton Act.

plausible antitrust claims based on tying or bundling discounts, and (4) certain of Vision-Ease's state law claims fail to state claims upon which relief may be granted.

### *Statute of Limitations (Counts I, II, III and IV)*

Transitions argues that Vision-Ease's federal and state antitrust claims are barred by the applicable statutes of limitations. "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted). Thus, a motion to dismiss based on the statute of limitations is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred. *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003).

An action for damages under federal antitrust law must be commenced within four years of accrual. 15 U.S.C. § 15b. An antitrust cause of action accrues, and the limitations period begins to run, when a defendant commits an act that causes injury to the plaintiff. *See Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971). The Supreme Court has recognized that in the context of a continuing conspiracy to violate the antitrust laws, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and ... as to those damages, the statute of limitations runs from the date of commission of the act." *Zenith*, 401 U.S. at 338-39; *Poster Exchange, Inc. v. National Screen Service Corp.* 517 F.2d 117, 128 (5th Cir. 1975)(continuing antitrust conduct resulting in a continued invasion of a plaintiff's rights may give rise to continually accruing rights of action).

The Complaint alleges that Transitions engaged in a pattern of anticompetitive activity beginning in 1999 and continuing through at least 2010 when Transitions entered into a consent

degree with the Federal Trade Commission. *See* Complaint, ¶¶ 24, 46; *see also* Complaint, ¶¶ 33 ("[i]n 2005 ... Transitions began an exclusionary agreement campaign to lock up the other key distribution channels for photochromic lenses"), 34 ("[a]fter terminating Vision-Ease ... Transitions entered into exclusive contracts with over 50 retailers"), 51 ("Transitions ... maintains this monopoly power through its anticompetitive conduct"). That Transitions may have adopted an anticompetitive policy as early as 1999, does not preclude proof that Transitions engaged in anticompetitive conduct (*e.g.*, new exclusive dealing agreements, tying arrangements, or bundled discounts) between 2006 and 2010.[4] As a result, and notwithstanding the absence of express allegations of similar conduct on the part of Transitions within the limitation period, the expiration of the statute of limitations is not apparent on the face of the complaint. *See Omar*, 334 F.3d at 1252 (affirming district court's denial of motion to dismiss based on statute of limitations when resolution of the issue "would

---

[4] To the extent Vision-Ease's antitrust claim in Count I can be read to rely solely on Transitions' termination of its contract with Vision-Ease and its refusal to deal with Vision-Ease after June 2005, *see, e.g.*, Complaint, ¶ 44 ("Vision-Ease lost all of the customers it had earned as of June 2005"), that claim, and any alleged damages flowing from theat conduct, is likely barred by the applicable federal and state statutes of limitations. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (holding that a plaintiff cannot "use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period"); *Zenith*, 401 U.S. at 340 ("We must now determine whether Zenith could have recovered [future] damages if it had brought suit for them in 1954, for if it could not, it would follow ... that it must be permitted to recover them now."); *see also Imperial Point Colonades Condo., Inc. Mangurian*, 549 F.2d 1029, 1035 (5th Cir. 1977) ("where a defendant commits an act injurious to plaintiff outside the limitations period, and damages continue to result from that act within the limitations period, no new cause of action accrues for damages occurring within the limitations period because no act committed by the defendant within that period caused harm"); *Poster Exchange, Inc. v. National Screen Service Corp.* 517 F.2d at 128 ("It remains clear nonetheless that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action.").

This issue, however, is not appropriate for resolution on a motion to dismiss. *See Rite Aid Corp. v. American Express Travel Related Services Co., Inc.*, 708 F.Supp.2d 257, 266-67 (E.D.N.Y. 2010) (refusing to dismiss claims for damages flowing from anticompetitive agreements entered into outside limitations period, but only as to damages plaintiff suffered within the limitations period); *see also Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) ("commencement of the statute of limitations is a question of fact");

depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in Defendants' favor").[5]

## *Standing*

Transitions argues that the Complaint lacks allegations sufficient to establish that Vision-Ease has standing to sue under federal antitrust law. An antitrust claimant must do more than make "allegations of consequential harm resulting from a violation of the antitrust laws," and that is true even when the complaint is "buttressed by an allegation of intent to harm the [claimant]." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 (1983).[6] Antitrust standing "ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atlanta Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

An antitrust claimant must show more than merely an "injury causally linked" to a competitive practice; it "must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). "At a minimum, this requirement means that one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition." *NicSand, Inc. v. 3M Company*, 507 F.3d 442, 450 (6th Cir. 2007).

---

[5] For the same reason, Transitions' motion to dismiss certain state law claims in Count IV based on state statutes of limitations also fails.

[6] In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), the Supreme Court identified several factors relevant to whether a plaintiff has standing to bring a federal antitrust claim including: (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall, (2) the directness of the injury, (3) the speculative measure of the harm, (4) the risk of duplicative recovery, and (5) the complexity in apportioning damages. Transitions focuses its argument in the motion to dismiss on the nature of the alleged injury suffered by Vision-Ease.

The Complaint alleges that Transitions engaged in anticompetitive conduct that "hindered or prevent[ed]" Vision-Ease from competing in the photochromic lens market. *See, e.g.*, Complaint, ¶ 3; *see also* Complaint, ¶ 31, 34-39, 45. In addition, the Complaint alleges that Transitions' conduct harmed consumers. *See, e.g.*, Complaint, ¶¶ 3, 41-42. These allegations, together with supporting factual allegations elsewhere in the Complaint, are sufficient to establish an antitrust injury and that Vision-Ease is an efficient enforcer. *See Palmyra Park Hosp. v. Phoebe Putney Memorial Hosp.*, 604 F.3d 1291, 1303 (11th Cir. 2010) (allegations that exclusivity arrangements forced insurers to deal with single competitor when they would otherwise prefer to deal with two or more competitors established antitrust injury); *see also NicSand, Inc.*, 507 F.3d at 454 (recognizing that the law is clear that "exclusive agreements" that "create impermissible barriers for new entrants to market ... and permit a supplier to charge monopoly prices" may violate federal antitrust law) (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)).[7]

### *Allegations Relating to Tying Arrangements and Bundled Discounts*

Transitions argues that to the extent the Complaint purports to assert claims based on alleged tying agreements and bundled discounts, the Complaint lacks factual allegations to support those claims.[8] The Court agrees that the allegations in the Complaint do not state an independent claim for "tying" under federal antitrust law, and does not contain sufficient factual allegations supporting an independent claim based on bundled discounts. *See Palmyra Park Hosp. Inc. v. Phoebe Putney*

---

[7] Transitions' reliance on *NicSand, Inc.* and similar case law is misplaced given the allegations in the Complaint. For example, the Complaint does not indicate that the *wholesalers* or *retailers* of photochromic lenses mandated price discounts and exclusivity nor does this case involve a competitor seeking to recoup lost market share in a market it used to dominate. *Id.* at 454 ("NicSand has not sued 3M because it wants to share shelf space with its competitor; it sued 3M because it wants that shelf space all to itself...").

[8] The Complaint alleges the existence of exclusionary agreements, tying arrangements, *and* bundled discounts. *See* Complaint, ¶¶ 4, 36-37.

*Memorial Hosp.*, 604 F.3d 1291, 1296 n.4 (11th Cir. 2010).[9] Nonetheless, the related allegations are relevant to Vision-Ease's overarching antitrust claims.[10] When these allegations, together with the other allegations in the Complaint, are taken as true with reasonable inferences drawn in favor of Vision-Ease, the Complaint states antitrust claims that are plausible on their face as required to survive a motion to dismiss under Rule 12(b)(6). *See Blue Sky Color Imagination, LLC v. Mead Westvaco Corp.*, No. CV 10-02175 DDP, 2010 WL 4366849, at *4 (C.D. Cal. Sept. 23, 2010) (refusing to apply *Cascade Health* in considering Rule 12(b)(6) motion to dismiss).[11]

### *Failure to State a Claim Under State Statutes (Count IV)*

Transitions argues that the Complaint fails to state a claim under the unfair competition statutes of Arkansas, Maryland, New Jersey, Tennessee, and Utah. The Complaint alleges that "Transitions has engaged in unfair and unconscionable conduct by limiting and excluding competition in the photocrhomic ophthalmic lens market." Complaint, ¶ 65. The motion to dismiss

---

[9] Vision-Ease did not respond to Transitions' argument that a tying claim requires products from two different markets. In addition, contrary to Vision-Ease's representation in its opposition memorandum, the Complaint does not include an allegation that Transitions agreed to stop requiring customers to accept exclusive agreements conditioned on them purchasing the entire line of photochromic products.

[10] For example, these allegations may be relevant to Vision-Ease's monopolization claim under § 2 of the Sherman Act (Count I). *See, e.g., Lepage's Inc. v. 3M*, 324 F.3d 141, 157 (3d Cir. 2003) (*en banc*) (holding that bundled rebates and exclusivity arrangements that may not, standing alone, give rise to claims under § 1 of the Sherman Act and § 3 of the Clayton Act, but may nonetheless be relevant to claims under § 2 of the Sherman Act); *see also United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 197 (3d Cir. 2005) (holding that finding of no liability under stricter standards of § 3 of the Clayton Act did not preclude application of evidence of exclusive dealing to support claim under § 2 of the Sherman Act).

[11] Because the Complaint contains sufficient factual allegations to state antitrust claims regardless of the alleged "bundled discounts," the Court need not address under what circumstances a bundled discount or rebate standing alone would constitute an antitrust violation. *Compare Lepage's Inc. v. 3M*, 324 F.3d 141, 157 (3d Cir. 2003) (*en banc*) (manufacturer's exclusionary conduct by bundling rebates could violate the Sherman Act's monopolization provisions) *with Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 903 (9th Cir. 2008) (exclusionary conduct element of monopolization or attempted monopolization claim arising under the Sherman Act could not be satisfied by reference to bundled discounts unless they resulted in prices that were below appropriate measure of defendant's costs).

will be granted as to Vision-Ease's claims under Maryland,[12] New Jersey,[13] Tennessee,[14] and Utah law,[15] but denied as to Vision-Ease's claim under Arkansas law.[16]

*Tortious Interference (Count V)*

Transitions argues that Vision-Ease has failed to state a claim for tortious interference under either Florida or Minnesota law. To establish a claim for tortious interference with a prospective business relationship, a plaintiff must prove the defendant intentionally committed a wrongful act which improperly interfered with the prospective relationship. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985); *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982). "[A] plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers[, but] no cause of action exists for tortious interference with a business's relationship to the community at large." *Southern Alliance Corp. v. Winter Haven*, 505 So.2d 489, 496 (Fla. 2d DCA 1987). While a plaintiff need not identify by name a specific

---

[12] Vision-Ease did not respond to Transitions' argument that Vision-Ease's claim under Maryland law should be dismissed.

[13] *See Wilson v. General Motors Corp.*, 921 A.2d 414 (N.J. 2007) (refusing to extend Consumer Fraud Act to indirect purchasers' claims based on antitrust violations); *see also Sickles v. Cabot Corp.*, 877 A.2d 267, 276 (N.Y. App. Div. 2005) (recognizing that "capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice") (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977)).

[14] *See Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) ("[a] deceptive act or practice is, in essence, a material representation, practice or omission likely to mislead ... reasonable consumers to their detriment") (internal citations and quotations omitted); *Bennett v. Visa, U.S.A., Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (holding that the Tennessee Consumer Protection Act does not apply to anticompetitive conduct); *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at * (Tenn. Ct. App. Jan. 31, 2003) (holding Tennessee Consumer Protection Act did not apply to alleged antitrust violations). *But see Blake v. Abbot Laboratories, Inc.*, C.A. NO. 03A01-9509-CV-00307, 1996 WL 134947, *6 (Tenn. Ct. App. March 27, 1996) (concluding that, at least for purposes of motion to dismiss, allegations of price fixing were sufficient to state a claim under the Tennessee Consumer Protection Act).

[15] Vision-Ease conceded that its claim under Utah law cites the wrong statutory provision and should be dismissed without prejudice.

[16] *See Baptist Health v. Murphy, M.D.*, 226 S.W.3d 800, 811 (Ark. 2006) ("The Arkansas Deceptive Trade Practices Act ... makes illegal any trade practice which is unconscionable, with includes conduct violative of public policy or statute."); *see also Curtis Lumber Co., Inc. v. Louisiana Pacific Corp.*, 618 F.3d 762, 776-77 (8th Cir. 2010) (holding that claims under the Arkansas Deceptive Trade Practices Act do not require knowing or intentional deception).

existing or prospective customer, the plaintiff must allege interference with a specific existing or prospective relationship. *See Ethan Allen v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994); *International Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (8th Cir. 1993).

The Complaint alleges only that Vision-Ease had "a reasonable expectation of business advantage and benefit" and that but for Transition's allegedly wrongful conduct, "Vision-Ease would have realized its economic advantage and benefit by entering into agreements with specialty retailers, mass merchants, and retail and wholesale ophthalmic lens laboratories." Complaint, ¶¶ 68, 71. These allegations are insufficient to state a claim for tortious interference under Florida and Minnesota law. *See Ethan Allen*, 647 So.2d at 813 ("an action for tortious interference ... requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered"); *International Travel Arrangers*, 991 F.2d at 1405 ("the mere general loss of possible unspecified customers does not establish the tort of intentional interference with prospective economic relations under Minnesota law"); *see also Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F.Supp.2d 1271, 1273-74 (S.D. Fla. 2010) (finding that defendant's allegation that the plaintiff interfered with its plan to sell sunglasses with "various customers" was "too vague and abstract to satisfy the first element of a tortious interference claim" when it referred to the "community at large instead of [] 'identifiable customers'").

Accordingly, Defendant Transitions Optical, Inc.'s Motion to Dismiss the Complaint of Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide, Inc. (Dkt. 73) is **GRANTED** in part and **DENIED** in part. Count IV is **DISMISSED** to the extent it purports to state claims under Maryland, New Jersey, Tennessee, and Utah law. Count V of the Complaint is **DISMISSED**

without prejudice. Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide, Inc. is granted leave to file an amended complaint within **twenty (20) days** from the date of this Order, or to communicate its intention not to file an amended complaint.

**DONE AND ORDERED** this /3^th day of October, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record